1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 10/7/10**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

ROSIE LUCIW,

Plaintiff,

v.

BANK OF AMERICA, N.A.; BAC HOME
LOANS SERVICING, LP, and DOES 1-100
inclusive,

Defendants.

Case No. 5:10-cv-02779-JF/HRL

**ORDER[1] GRANTING MOTION TO
DISMISS WITH LEAVE TO
AMEND**

[Docket No. 16]

Defendants Bank of America, N.A. ("BofA") and BAC Home Loans Servicing, LP
("BACHLS") (collectively, "Defendants") move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss
Plaintiff's complaint for failure to state a claim upon which relief may be granted.  Plaintiff
Rosie Luciw ("Plaintiff") opposes the motion.  The Court has considered the moving papers and
finds the motion suitable for determination without oral argument.  For the reasons discussed
below, the motion will be granted, with leave to amend.

///

---

[1] This disposition is not designated for publication in the official reports.

1

## I. BACKGROUND

2   Plaintiff filed the instant action on June 24, 2010, alleging that Defendants violated the

3   Real Estate and Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*.; California's

4   Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq*.;

5   California Financial Code § 50505; and California Civil Code § 2943.[2]  She also alleges that

6   Defendants engaged in a conspiracy to violate these laws and regulations.

7   Plaintiff owns and resides at real property located at 4040 Hidden Valley Lane, San Jose,

8   California.  (Complaint ¶ 4.)  She purchased the property with a $430,000 first mortgage loan

9   from BofA.  (*Id.* at ¶ 12.)  She subsequently refinanced the property through another loan from

10  BofA.  (*Id.*)  BACHLS is the servicer of Plaintiff's second loan.  (*Id.* at ¶ 6.)  Plaintiff defaulted

11  on the second loan, and Cal-Western recorded a notice of default on the property on June 3,

12  2009.  (*Id.* at ¶ 13.)  On September 14, 2009, Cal-Western recorded a notice of trustee's sale and

13  scheduled the sale to occur on October 1, 2009.  (*Id.*)  That sale was postponed, and Plaintiff

14  filed two Chapter 13 bankruptcy petitions in early 2010, resulting in further postponements of

15  the trustee's sale.  (*Id.* at ¶¶ 15-16.)  Each bankruptcy petition was dismissed, (*id.*), and Cal-

16  Western subsequently rescheduled the trustee's sale for July 8, 2010, without recording a new

17  notice of sale, (*id*. at ¶ 17).  It appears that this trustee's sale also has been postponed.[3]

18  On January 26, 2010, after filing her initial bankruptcy petition, Plaintiff – through her

19  counsel – sent a request via certified mail to BofA, seeking various documents including copies

20  of "[a]ll uncertificated security and certificates of asset backed securities related to this Deed of

21  Trust and Promissory note" and "all payments for services rendered on this Deed of Trust and

22  Promissory Note that went to . . . servicers and sub-servicers."  (*Id.* at 14; Ex. A.)  Plaintiff

23

24  _____

25  [2]  Plaintiff also names Cal-Western Reconveyance Corporation ("Cal-Western") as a
defendant in the body of her complaint, (Complaint ¶ 7), but the case caption of her complaint

26  does not include Cal-Western, and Cal-Western has not been served in connection with the
complaint.

27  [3]  In her opposition papers, Plaintiff alleges that the trustee's sale currently is scheduled

28  for October 1, 2010.  (Pl.'s Opp'n at 5:25.)

2

1    contends that this letter was a qualified written request ("QWR") as that term is defined under

2    RESPA, 12 U.S.C. § 2605(e)(1)(B).  Plaintiff sent the same letter to BofA on May 11, 2010, and

3    a certified mail receipt from the United States Postal Service indicates that the letter was

4    delivered on May 14, 2010.  (*Id.* at 18, Ex. B.)  As of the date the complaint was filed,

5    Defendants had not responded to either letter.

6                                    **II. MOTION TO DISMISS**

7    **A.    Legal Standard**

8            "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a

9    cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.*

10   *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  On a motion to dismiss, the

11   court's review is limited to the face of the complaint and matters judicially noticeable.  *MGIC*

12   *Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)*; N. Star Int'l v. Ariz. Corp. Comm'n*,

13   720 F.2d 578, 581 (9th Cir. 1983).  However, under the "incorporation by reference" doctrine, the

14   court also may consider documents which are referenced extensively in the complaint and which

15   are accepted by all parties as authentic.  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986

16   (9th Cir. 1999).  For purposes of a motion to dismiss, the plaintiff's allegations are taken as true,

17   and the court must construe the complaint in the light most favorable to the plaintiff.  *Jenkins v.*

18   *McKeithen*, 395 U.S. 411, 421 (1969).  "To survive a motion to dismiss, a complaint must

19   contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

20   face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the

21   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

22   *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23   556, 570 (2007)).  Thus, a court need not accept as true conclusory allegations, unreasonable

24   inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint.

25   *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).  If a complaint lacks

26   facial plausibility, leave to amend must be granted unless it is clear that the complaint's

27   deficiencies cannot be cured by amendment.  *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir.

28   1995).  When amendment would be futile, however, dismissal may be ordered with prejudice.

3

1    *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

2    **B.    The RESPA claim**

3         Defendants contend that Plaintiff has failed to state a RESPA claim with respect to the

4    alleged QWR because (1) Plaintiff's letters do not satisfy the requirements of a QWR, (2) the

5    recipient of the letters does not have a duty under RESPA to respond to the letters, even if the

6    letters are QWRs, and (3) Plaintiff does not allege damages resulting from Defendants' failure to

7    respond to the letters.[4]

8         **1.    Whether the letters are QWRs**

9         Pursuant to RESPA, the "servicer of a federally related mortgage loan" must acknowledge

10   the receipt of a QWR within twenty days and must respond substantively to the QWR within

11   sixty days. 12 U.S.C. § 2605(e)(1)(A), (e)(2). Correspondence must meet several statutory

12   requirements in order to be considered a QWR. Specifically, a QWR is a written request other

13   than notice on a payment coupon or other payment medium supplied by the servicer. 12 U.S.C. §

14   2605(e)(1)(B). A QWR must request information relating to the servicing of a loan. 12 U.S.C. §

15   2605(e)(1)(A). Under RESPA, "[t]he term 'servicing' means receiving any scheduled periodic

16   payments from a borrower pursuant to the terms of any loan . . . and making the payments of

17   principal and interest and such other payments with respect to the amounts received from the

18   borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). The

19   request must provide sufficient information for the servicer to identify the name and account of

20   the borrower. 12 U.S.C. § 2605(e)(1)(B)(i). Finally, a QWR must:

21        include[] a statement of the reasons for the belief of the borrower, to the extent applicable,
         that the account is in error or provide[] sufficient detail to the servicer regarding other
22        information sought by the borrower.

23   12 U.S.C. § 2605(e)(1)(B)(ii).

24        Plaintiff's letters are not made on a payment coupon or other payment medium supplied

25

26        [4] While the complaint discusses other potential RESPA violations, including an alleged
     failure to disclose "kickback" fees in the form of broker compensation and processing fees,
27   (Complaint ¶ 22), Plaintiff concedes that she does not allege RESPA violations other than
     Defendants' failure to respond to the purported QWRs, (Pl.'s Opp'n at 6:15.)
28

4

1  by the servicer.  (*See* Complaint, Ex. A.)  At least some of the information requested relates to the

2  scheduled periodic payments pursuant to the terms of loan.  (*See, e.g.,* Complaint, Ex. A at 2

3  (seeking a statement of all of the payments made on the promissory note and a "breakdown" of

4  the amount of the claimed arrears or delinquencies).)  The letters provide Plaintiff's name and

5  account number.  (Complaint, Ex. A at 1.)  Defendants point out that the letters do not include a

6  statement of the reasons for Plaintiff's belief that the account is in error, and they contend that a

7  QWR must allege an error in the accuracy of the account or information with respect to the

8  servicing of the loan.

9      However, 12 U.S.C. § 2605(e)(1)(B)(ii) is written in the disjunctive:  a QWR may include

10  a statement of the reason, *to the extent applicable*, for the borrower's belief that the account is in

11  error *or* provide sufficient detail to the servicer regarding *other information sought*.  *See In re*

12  *Pacific-Atlantic Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995) (citing *United States v.*

13  *Behnezhad*, 907 F.2d 896, 898 (9th Cir. 1990)) (noting that when subsections are provided as

14  "alternatives, separated by the word 'or,'" a court should interpret the subsections as setting out

15  "separate and distinct alternatives").  While 12 U.S.C. § 2605(e)(1)(B)(ii) presents two

16  alternatives within the same subsection, the statute separates the alternatives with the word "or"

17  and contemplates that a statement with respect to an account error may not be "applicable."  In

18  the event such a statement is not applicable, RESPA requires instead that the borrower "provide[]

19  sufficient detail to the servicer regarding other information sought."  12 U.S.C. §

20  2605(e)(1)(B)(ii).  The statute's reference to an "error" with respect to one alternative does not

21  refer to or modify the second, separate and distinct alternative.

22      Defendants rely upon *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086,

23  1097 (E.D. Cal. 2009), which concluded that the letter at issue in that case was not a QWR

24  because it "'simply disputed the validity of the loan and not its servicing.'" *Id.* (citing *Consumer*

25  *Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009)).  However, *Keen*

26  did not discuss whether the letter in that case "provide[d] sufficient detail to the servicer

27  regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).  In the

28

5

1    instant case, while Plaintiff's letters do not appear to dispute the validity of the loan or its

2    servicing, they do provide specific detail with respect to the information sought, and at least some

3    of that information relates to the servicing of the loan.  While Plaintiff's letters also appear to

4    seek information beyond the servicing of the loan, it is not clear that a written request cannot be a

5    QWR simply because only some of the information sought is beyond the scope of the statute.

6    Defendants' papers do not address this issue.

7              **2.       Whether the recipient of the letters has a duty to respond**

8              Although she mailed the letters to BofA, Plaintiff concedes that BACHLS is the servicer

9    of the loan.  (*See* Complaint ¶¶ 5-6).  Only the servicer has a duty under RESPA to respond to a

10   QWR.  12 U.S.C. § 2605(e)(2).  In her opposition papers, Plaintiff contends that BACHLS not

11   only received her first letter but also responded to that letter on August 10, 2010.  (*See* Plaintiff's

12   Opp'n to MTD, Ex. 2.)  However, these allegations are not made in the complaint or in

13   documents attached to or referenced in it, nor are the allegations the proper subject of judicial

14   notice.  *See* FED. R. EVID. 201(b) (noting that judicial notice is appropriate only for facts "(1)

15   generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

16   ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

17   Based on facts that the Court properly may consider, Plaintiff has failed to state a RESPA claim

18   because she does not allege sufficiently that the servicer of the loan received the alleged QWR

19   and failed to respond within the appropriate period of time.

20             **3.       Whether Plaintiff sufficiently has alleged damages in connection with her**

21                        **RESPA claim**

22             Defendants also contend that Plaintiff's RESPA claim is deficient because she has failed

23   to allege any pecuniary damages resulting from Defendants' lack of response to her letters.

24   RESPA provides that "in the case of any action by an individual, [the servicer is liable for] an

25   amount equal to the sum of . . .(A) any actual damages to the borrower as a result of the failure;

26   and (B) any additional damages, as the court may allow, in the case of a pattern or practice of

27   noncompliance with the requirements of this section, in an amount not to exceed $ 1,000."  12

28   U.S.C. § 2605(f)(1).  Thus, to state a claim for a RESPA violation, Plaintiff must plead either that

6

1  she has suffered actual damages or that BACHLS has engaged in a pattern or practice of violating

2  RESPA; otherwise, the complaint fails to allege the servicer's liability under the statute.  *See,*

3  *e.g., Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) ("Although

4  [12 U.S.C. § 2605(f)(1)] does not explicitly set this out as a pleading standard, a number of courts

5  have read the statute as requiring a showing of pecuniary damages in order to state a claim.").

6  However, "courts have interpreted this requirement liberally." *Yulaeva v. Greenpoint Mortg.*

7  *Funding, Inc.*, No. CIV. S-09-1504 LKK/KJM, 2009 WL 2880393, at *15 (E.D. Cal. Sept. 3,

8  2009).

9  While Plaintiff alleges conclusorily that Defendants have engaged in a pattern or practice

10  of noncompliance with RESPA, (Complaint ¶ 28), she does not allege any factual basis for such a

11  claim.[5]  *See Clegg*, 18 F.3d at 754-755 (noting that conclusory allegations need not be accepted).

12  Plaintiff also contends that she has suffered actual damages because Defendants' alleged failure

13  to respond to the QWRs has (1) prevented her from filing legal action that includes all of the facts

14  and parties sufficient to enjoin the trustee's sale of her home and (2) forced her to incur attorneys'

15  fees in her pursuit of a response to the alleged QWRs.

16  With respect to the latter point, attorneys' fees typically are not considered "actual

17  damages," and other district courts have rejected similar arguments.  *See Shepherd v. Am. Home*

18  *Mortg. Servs.*, NO. CIV. 2:09-1916 WBS GGH, 2009 U.S. Dist. LEXIS 108523, *11 (E.D. Cal.

19  Nov. 20, 2009) (concluding that the plaintiff's allegation that he "ha[d] suffered and continue[d]

20  to suffer damages and costs of suit" was insufficient for purposes of 12 U.S.C. § 2605(f)(1), even

21  under "a liberal pleading standard for harm"); *Benham v. Aurora Loan Servs.*, No. C-09-2059 SC,

22

23  _____

    [5]  Plaintiff notes that Defendants contend that BACHLS never received "any QWR from
24  Plaintiff," (Def.'s Mot. at 4:22-23), yet she submits a letter purportedly from BACHLS
    confirming that BACHLS received Plaintiff's letter dated January 26, 2010, (Pl.'s Opp'n, Ex. 2).
25  She claims that this inconsistency demonstrates that Defendants are acting in bad faith and
    exhibits a likelihood that Defendants have engaged in a pattern and practice of similar violations.
26  However, as discussed above, the Court may not consider the correspondence from BACHLS for
    purposes of this motion to dismiss because the contents of that letter are not alleged in the
27  complaint.  Moreover, Defendants have not denied that BACHLS received a letter from Plaintiff;
    they argue only that the letter is not a QWR.
28

Case No. 5:10-cv-02779-JF/HRL
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX1)

1   2009 U.S. Dist. LEXIS 91287, at *12 (N.D. Cal. Sept. 30, 2009) (concluding that an allegation

2   that the plaintiff "has suffered and continues to suffer damages and costs of suit" was insufficient

3   to show pecuniary loss); *Allen*, 660 F. Supp. 2d at 1097 (concluding that attorneys' fees are not a

4   "pecuniary loss" sufficient for purposes of 12 U.S.C. § 2605(f)(1)).

5       With respect to the former point, Plaintiff alleges that she does not recall the "precise

6   terms of [her] current loan," (Complaint ¶ 14), and that Defendants' failure to respond to the

7   alleged QWR has prevented her from modifying her current loan or mounting an adequate

8   challenge to Defendants' proposed trustee's sale, (Complaint ¶ 32). Defendants point out that

9   "[n]othing in [RESPA] shall affect the validity or enforceability of any sale or contract for the

10  sale of real property or any loan, loan agreement, mortgage, or lien made or arising in connection

11  with a federally related mortgage loan." 12 U.S.C. § 2615. If the RESPA violation somehow

12  caused an invalid trustee's sale to proceed, it is conceivable that Plaintiff might have suffered

13  actual damages as a result. However, Plaintiff does not provide any factual support for her

14  conclusory allegation that Defendants' failure to respond to the letters caused an invalid trustee's

15  sale, nor does she allege that she made an attempt to modify her loan that failed because

16  Defendants did not respond to her letters.

17      Accordingly, Plaintiff's RESPA claim will be dismissed. Because it is conceivable that

18  the claim's deficiencies could be cured by amendment, leave to amend will be granted. *Lucas*, 66

19  F.3d at 248.

20  **C.     The UCL claim**

21      The UCL prohibits any "unlawful, unfair or fraudulent business practices." *Cel-Tech*

22  *Commc'ns, Inc. v Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute

23  is written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2)

24  unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003).

25  Plaintiff alleges that Defendants have violated the "unlawful" prong of the UCL. (Complaint ¶

26  34.) "'By proscribing 'any unlawful' business practice, [the UCL] 'borrows' violations of other

27  laws and treats them as unlawful practices that the unfair competition law makes independently

28  actionable.'" *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000)

8

1    (quoting *Cel-Tech*, 20 Cal. 4th at 180).  Plaintiff claims that Defendants violated the UCL when

2    they allegedly violated RESPA, California Financial Code § 50505, and California Civil Code §

3    2943.[6]  California Financial Code § 50505(a) provides that a violation of RESPA also violates the

4    California Financial Code.  As discussed above, Plaintiff's RESPA claim will be dismissed with

5    leave to amend.  Accordingly, Plaintiff has yet to state a UCL claim predicated upon violations of

6    RESPA or California Financial Code § 50505.

7         With respect to Plaintiff's final contention, § 2943 provides that a "beneficiary" must

8    respond within twenty-one days to a request for certain information by an "entitled person."  Cal.

9    Civ. Code § 2943(b)(2), (c)(1).  A "beneficiary" is defined as "a mortgagee or beneficiary of a

10   mortgage or deed of trust."  Cal. Civ. Code § 2943(a)(1).  For relevant purposes, an "entitled

11   person" is the mortgagor of the mortgaged property.  Cal. Civ. Code § 2943(a)(4).  If the

12   beneficiary "willfully fails" to respond to a proper request within twenty-one days, the beneficiary

13   is liable to the entitled person for "all damages which he or she may sustain by reason of the

14   refusal and, whether or not actual damages are sustained, he or she shall forfeit to the entitled

15   person the sum of three hundred dollars . . . ."  Cal. Civ. Code § 2943(e)(4).

16        Defendants contend that Plaintiff's UCL claim predicated upon § 2943 should be

17   dismissed because Plaintiff does not plead facts to support such a claim, and Plaintiff's

18   opposition papers make no mention of § 2943.  Pursuant to § 2943(b)(2), a request for a copy of

19   the note or a "beneficiary statement" may be made "any time before, or within two months after,

20   the recording of a notice of default."  Cal. Civ. Code § 2943(b)(2).  If no notice of default is

21   recorded (i.e., if a judicial foreclosure is sought), the request "may otherwise be made more than

22   30 days prior to the entry of the decree of foreclosure."  *Id.*  In this instance, a notice of default

23   was recorded on June 3, 2009, (Complaint ¶ 13), and Plaintiff did not submit a request for

24

25        [6] To the extent that Plaintiff also claims that Defendants have violated the UCL by
26   breaching a written loan agreement and oral modification agreement and by conspiring to conceal
     material facts relating to Plaintiff's loan, (Complaint ¶ 35), Plaintiff does not allege any factual
27   support for such claims.  Such conclusory allegations need not be accepted.  *See Clegg*, 18 F.3d
28   at 754-755.

9

information to BofA until January 26, 2010, (Complaint ¶ 14).  Pursuant to § 2943(c)(1), a

request for a "pay-off demand statement" must be received by the beneficiary before the "first

publication of a notice of sale."  Cal. Civ. Code § 2943(c)(1).  In this instance, a notice of sale

was recorded on September 14, 2009, well before Plaintiff made her request for information.

While § 2943(c)(2) does not place time constraints on a request for "short-pay demand

statement," Plaintiff's letters do not request that Defendants provide such a statement, which is an

"agreement in writing in which the beneficiary agrees to release its lien on a property in return for

payment of an amount less than the secured obligation."  Cal. Civ. Code § 2943(c)(2); (*see also*

Complaint, Ex. A).  Accordingly, Plaintiff has failed to state a UCL claim predicated on a

violation of § 2943.[7]

## IV.  CONCLUSION

Pursuant to the foregoing discussion, Defendants' motion to dismiss will be granted with

leave to amend.  Any amended pleading shall be filed and served within thirty (30) days of the

date this order is filed.

IT IS SO ORDERED.

DATED:  10/6/2010

_____
JEREMY FOGEL
United States District Judge

---

[7]  To the extent that she claims that Defendants conspired to violate RESPA and the UCL, (Complaint ¶ 11), Plaintiff does not allege factual support for such a claim, and such conclusory allegations need not be accepted.  *See Clegg*, 18 F.3d at 754-755.

Case No. 5:10-cv-02779-JF/HRL
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND
(JFEX1)